George Thacker and Reba Thacker v. Commissioner.
Thacker v. Commissioner
Docket No. 1619-69-SC.
United States Tax Court
T.C. Memo 1969-276; 1969 Tax Ct. Memo LEXIS 18; 28 T.C.M. (CCH) 1433; T.C.M. (RIA) 69276; December 17, 1969, Filed George Thacker and Reba Thacker, pro se, 1931 Pickwick Lane, Tyler, Tex., D. Ronald Morella, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' income tax for 1966 in the amount of $227.43. Petitioners deny that there is a deficiency and allege that, in fact, they made an overpayment of their income tax for that year in the amount of $296.40. The issues presented for decision are: (1) Whether petitioners incurred a deductible loss in the operation of a farm, and if *19 so, in what amount. (2) Whether petitioners are entitled to deductions totaling $1,560 for depreciation and expenses of a pick-up truck. Findings of Fact Petitioners George and Reba Thacker, husband and wife, were legal residents of Tyler, Texas, at the time their petition was filed. They filed their joint income tax return for 1966 with the district director of internal revenue at Dallas, Texas. They kept their records and prepared their return on a cash basis. George was 55 years of age at the time of the trial. He was born and reared on a farm near Mineola, Texas, where he lived until he and Reba were married in 1935. After his marriage he was employed by Ford Motor Company and, later, by Magnolia Pipe Line Company in Dallas. He served in the Navy during World War II and, in 1952, moved to Tyler, Texas, where he operated a service station for three years. Since 1955 George has been employed with National Homes Corporation as a long-haul truck driver. By 1966 he had longer tenure in his position than any other driver except one. His seniority entitled him to select his driving assignments which, under his union's contract, could not exceed 70 hours of service per week. *20 His selection of a route between Tyler, Texas, and Kansas City, Missouri, permitted him 1434 frequently to work the required number of hours during four days of each week, leaving the remainder for his own pursuits. His salary in 1966 was $10,060.59. Beginning at least as early as 1959 George engaged in the purchase, breeding, and sale of horses, principally quarter horses. He enjoyed riding and working with horses, and his farm background gave him considerable expertise in handling them. In making purchases he selected only horses which he thought could be resold at a profit. In 1961 he acquired four acres of land, located 12 miles from his home in Tyler. Using scrap lumber acquired at a minimum of cost, he built a barn and corrals for his horses and kept them on the farm. Upon acquiring the land he promptly erected on the premises a sign advertising the availability of the services of a quarter horse King Ranch stallion for breeding purposes. Petitioners were required to be at the farm twice daily to feed, water, and care for the horses. When George was away from home on truck driving assignments, Reba drove the 12 miles to and from the farm twice each day and took care of *21 the animals. Petitioners drove the family automobile and a pick-up truck over 15,000 miles during 1966 in caring for their horses and in attending horse shows. The truck consumed gasoline at the rate of seven or eight miles per gallon; the gasoline cost an average of 29 cents per gallon. George bought feed for the horses and hired part-time labor to assist in clearing the land, maintaining the fences, barn, and corrals, and grooming the horses. On weekends he frequently attended horse shows in which he entered one or more of his horses, and in this connection incurred expenses for entry fees, transportation, and related items. His participation in horse shows helped build a reputation for his horses enabling him to sell them at higher prices. The following table, compiled from petitioners' income tax returns, shows the number of horses sold, their cost and selling price, the gain from such sales, and the expenses incurred by petitioners in their horse raising and trading activities, in each of the years 1959 through 1966: Year
NumberSold
Cost
SellingPrice
Gain$ HExpenses [1]
1959
3
[2] $1,260.00
$2,850.00
n3 $1,705.00
$ 1,191.21
1960
3
1,200.00
1,585.00
385.00
1,420.58
1961
0
970.14
1962
2
1,025.00
2,050.00
[3] 1,087.50
1,453.13
1963
0
3,290.72
1964
3
1,882.50
4,375.00
[3] 2,633.68
2,149.57
1965
3
1,250.00
2,250.00
[4] 1,000.00
2,021.28
1966
2
725.00
1,000.00
275.00
1,360.05
*22 Petitioners' income tax return for 1966 reflects that they owned five horses during that year. They carefully preserved all canceled checks used to defray their expenses for 1966, which were as follows: Labor
$223.28
Feed
811.23
Utilities
97.38
Horse shows
228.16
Petitioners sold their farm in 1969, realizing a profit of about $6,000. Ultimate Findings of Fact The expenses of petitioners in connection with horse trading activities during 1966 were incurred in carrying on a trade or business. Petitioners used their pick-up truck for commuting to and from their farm; the expense of operating the truck and its depreciation were nondeductible personal expenses. Opinion Section 162(a) [1] allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The expenses *23 incurred in the pursuit of a hobby, however, are not business expenses but are 1435 personal expenses. And section 262 provides that "no deduction shall be allowed for personal, living, or family expenses." Thus, the crucial question is whether petitioners' activities in connection with the buying, breeding, showing, and selling of horses constituted a trade or business or a hobby. [2]
The question whether petitioners' activities with respect to their horses amounted to the carrying on of a trade or business depends to a significant degree on whether they intended to realize a profit from those endeavors. Margit Sigray Bessenyey, 45 T.C. 261, 273 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967). Careful consideration of all the evidence convinces us that petitioners' activities constituted a business. The level of petitioners' other income, their frugality, their careful preservation of records *24 of all expenses, the care with which George selected horses for purchase with a view to their eventual resale, his knowledge of horses, the inexpensive facilities constructed on the farm, and the net profit realized from the operations in two of the eight years convinces us that petitioners' motive was to make a profit from their venture. Moreover, when the gain from the sale of the land is taken into account, petitioners did realize an overall, long-term profit. As to the depreciation and cost of operation of the truck, these items are nondeductible. The truck was used mainly for the transportation of petitioners between their home in Tyler and their place of business, the farm. Such transportation was in the nature of commuting, a nondeductible personal expense. Sec. 1.162-2(e), Income Tax Regs. The evidence as to the business use of the truck is not sufficiently specific to permit an allocation of its depreciation and operating expenses under the principle of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Decision will be entered under Rule 50. Footnotes
1. Does not include depreciation claimed on breeding animals. ↩
2. Includes expenses of sale in the amount of $110. ↩
3. Adjusted for depreciation allowed or allowable. ↩
4. Does not include gain of $62 reported from the sale of cows, but does include $650 received as insurance proceeds for one mare which died.↩
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. Respondent concedes that petitioners actually paid the expenses described in our findings, but contends they were not attributable to a trade or business.↩